IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KHOJIAKBAR MADAMINOV,<br><br>Petitioner,<br><br>v.<br><br>JEROME J. KRAMER, Sheriff of Lincoln County, Nebraska, and Custodian of the Lincoln County Detention Center; DAVID EASTERWOOD, Field Office Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; and TODD BLANCHE, Attorney General, United States Department of Justice, in their official capacities,<br><br>Respondents. | **4:26CV3347**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on petitioner Khojiakbar Madaminov's ("Madaminov") Petition for Writ of Habeas Corpus (Filing No. 1) pursuant to 28 U.S.C. § 2241. Madaminov is a native and citizen of Uzbekistan. On March 20, 2023, Madaminov entered the United States in California, outside of a lawful port of entry. After crossing the border, he was initially detained and placed in removal proceedings under 8 U.S.C. § 1229a before being released into the country.[1] Since that release, he has resided primarily in Chicago, Illinois, and has filed an application for asylum. Based on his

[1]Madaminov's counsel notes that he does not currently have the "release instrument itself," so it is not clear whether Madaminov was released on an "Order of Release on Recognizance" or on parole authorization under 8 U.S.C. § 1182(d)(5)(A). In any event, Madaminov makes clear that he is a noncitizen who entered the United States without admission.

pending asylum application, he obtained employment authorization and a commercial driver's license. He has worked as a commercial truck driver while he awaits his individual hearing before an immigration judge.

On October 9, 2026, Immigration and Customs Enforcement ("ICE") officers arrested him while he was working in Nebraska. He remains detained at the "Lincoln County Detention Center in North Platte, Nebraska." For the reasons explained below, Madaminov's habeas petition is denied.

## I. DISCUSSION

### A. Habeas Corpus

The Court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Rasul v. Bush*, 542 U.S. 466, 473, 483 (2004). Because Madaminov is reportedly detained within the geographical boundaries of this district, this Court possesses jurisdiction. *See* 28 U.S.C. § 2241(a).

While 28 U.S.C. § 2243 generally requires the Court to order a petitioner's immediate physical custodian to "show cause why the writ should not be granted," it need not do so if "it appears from the application that [Madaminov] is not entitled" to relief. Here, the petition fails on its face because it appears from the application that he is not. *See id.*

### B. Mandatory Detention

Madaminov reports he has been re-detained as an "applicant for admission" pursuant to 8 U.S.C. § 1225(b)(2)'s mandatory-detention provision. *See Avila v. Bondi*, 170 F.4th 1128, 1136-38 (8th Cir. 2026) (holding that aliens who are "applicants for admission" under 8 U.S.C. § 1225(a) are also "seeking admission" and thus subject to mandatory detention under § 1225(b)(2)). For his part, he acknowledges that he is charged as "present without admission or parole" and that under *Avila*, he is subject to mandatory detention. Yet he contends that *Avila* "does not control" his case because it did not

specifically address whether the government may use § 1225(b)(2)(A) to *re-detain* an "applicant for admission" that had been previously released. This argument is unpersuasive.

The fact that this is Madaminov's second detention does not mean that *Avila* does not control his case. It does. The Court understands the factual distinction that Madaminov is trying to draw—Madaminov entered without inspection, was initially detained, and then released into the country before his re-detention—whereas the petitioner in *Avila* entered without inspection and was detained years later. But the Eighth Circuit gave no import to those background facts, only briefly mentioning them once in the introductory paragraph and omitting them from its detailed analysis. *See Avila*, 170 F.4th at 1132. Nothing in *Avila* even remotely gives those background facts the import Madaminov assigns.

Crucially, aliens who enter without inspection—like Madaminov and Avila—are defined by statute as "applicants for admission" because they have "not been admitted." 8 U.S.C. § 1225(a). That is the foundation for the rule of decision in *Avila*—not the number of times an applicant for admission was detained or whether they were discretionarily released at some point. *See Avila*, 170 F.4th at 1138 (explaining that "the text here is clear that an 'applicant for admission' is also an alien who is 'seeking admission'" under § 1225(b)(2)(A), and thus subject to mandatory detention). Because Madaminov entered the United States without inspection, he remains an "applicant for admission"—which he admits—and § 1225(b)(2) mandates his detention. *See id.*

**C. Due Process**

Madaminov next contends that his "re-detention without any individualized hearing violates the Due Process Clause of the Fifth Amendment." It doesn't. As this Court has previously held, mandatory detention of certain categories of aliens without a bond hearing does not violate due process. *See Mendez Leiva v. Berg*, No. 4:26CV3023, 2026 WL 948430, at *2-5 (D. Neb. Apr. 8, 2026) (citing *Demore v. Kim*, 538 U.S. 510, 526 (2003),

*Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024), and *Carlson v. Landon*, 342 U.S. 524, 538 (1952)). An alien may be detained without violating due process even if the alien is neither dangerous nor a flight risk. *See Mendez Leiva*, 2026 WL 948430, at *2-5 (citing *Demore*, 538 U.S. at 524-25, 531). Madaminov's detention does not violate the Fifth Amendment's substantive- or procedural-due-process requirements.

**D. Parole Regulations and the *Accardi* doctrine**

Madaminov's *Accardi* claim does not change the Court's conclusions. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954). *Accardi* generally requires an agency to follow the regulations governing the exercise of its discretion. *See id.* Madaminov argues that before his current detention, he was "release[d] on conditional parole under 8 U.S.C. § 1226(a)(2)(B) and 8 U.S.C. § 236.1(c)(8)." In his view, because he was re-detained "in disregard of those procedures" his detention is invalid. The Court disagrees.

Even assuming ICE's revocation was procedurally defective, "habeas is not a vehicle to redress defects in an initial arrest." *Palma v. Powell*, 828 F. Supp. 3d 1297, 1308 (N.D. Ala. 2026). The purpose of habeas "is to ascertain whether [Madaminov] can lawfully be detained in custody" now. *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)). If there is "sufficient ground for his detention . . . he is not to be discharged for defects in the original arrest or commitment." *Id.* "Irregularities on the part of the government official prior to, or in connection with, [Madaminov's] arrest would not necessarily invalidate later proceedings." *Id.* Because § 1225(b)(2)(A) independently requires his present detention, the alleged defect in Madaminov's re-detention does not entitle him to habeas relief.

**E. Suspension Clause**

Lastly, Madaminov argues that by detaining noncitizens like him who have been previously "released under § 1226" without holding a bond hearing, the government has "extinguished the core function of the writ [of habeas corpus]" in violation of the

Suspension Clause to the United States Constitution. *See* U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

"[T]he premise of this argument borders on the absurd." *Guevara-Hernandez v. Blanche*, No. 1:26-CV-59-ZMB, 2026 WL 1728803, at *6 (E.D. Mo. June 15, 2026). The Court is currently reviewing Madaminov's habeas petition and constitutional claims now. *See Tapia v. Mullin*, 834 F. Supp. 3d 718, 727 (W.D. Tex. 2026) (observing that "the fact that . . . detained aliens under section 1225(b)(2)(A) have been challenging . . . the lawfulness of their detention through petitions for writs of habeas corpus" is evidence that the writ is not suspended).

Moreover, Madaminov's "Suspension Clause argument fails because it would extend the writ of habeas corpus far beyond its scope 'when the Constitution was drafted and ratified.'" *DHS v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (quoting *Boumediene v. Bush*, 553 U.S. 723, 746 (2008)). "Habeas has traditionally been a means to secure release from unlawful detention." *Id.*

Here, Madaminov is detained while he pursues his asylum claim in a country where he holds no lawful status. Madaminov "does not want 'simple release'" but the opportunity to be released into the interior of the United States without admission while his removal proceedings are pending. *Id.* That relief "falls outside the scope of the writ as it was understood when the Constitution was adopted." *Id.* at 120.

Based on the foregoing, petitioner Khojiakbar Madaminov's Petition for Writ of Habeas Corpus (Filing No. 1) is denied in its entirety. This case is dismissed. A separate judgment will issue.

IT IS SO ORDERED.

Dated this 16th day of October 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge